UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHAN GEORGE JONES,<br><br>Defendant. | 3:16-CR-30070-RAL<br><br>**OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE WITHOUT PREJUDICE TO RE-FILING** |

A federal grand jury indicted Stephan George Jones (Jones) on one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Doc. 1. On January 24, 2017, Jones appeared before this Court and entered a guilty plea to the indictment. Doc. 69. On April 11, 2017, this Court held a sentencing hearing in Jones's case and imposed a custody sentence of 120 months followed by five years of supervised release. Docs. 82 at 1; 84 at 2–3. Jones is currently incarcerated at Federal Correctional Institution Englewood (FCI Englewood) and has filed a pro se motion for compassionate release, citing his age, race, and health conditions in combination with the global COVID-19 pandemic as justification. Doc. 90. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has submitted a supplement to Jones's motion, and the Government has responded in opposition. Docs. 97, 101. FPD has replied. Doc. 103. After the motion was fully briefed, Jones filed a supplement, Doc. 104, attaching a letter that Jones's lawyer wrote to the FCI Englewood warden advocating for compassionate release, Doc. 104-2, and a letter dated September 9, 2020, by which the FCI Englewood warden advised that FCI Englewood was preparing a formal referral

1

to the Office of General Counsel for review of Jones possibly being granted compassionate release, Doc. 104-1. At the time of receiving this supplement, this Court had a draft decision denying compassionate release, but withheld finalizing or filing that decision in case the Bureau of Prisons (BOP) released Jones. This Court recognized that Jones's case presented a closer call for compassionate release than many others.

The only subsequent filing in Jones's case was another supplement, Doc. 105, filed by Jones on December 2, 2020. This supplement advised that there were 141 active COVID-19 cases among inmates and 32 active cases among staff at FCI Englewood. When this Court had drafted a decision denying Jones's request for compassionate release, there were no active COVID-19 cases at FCI Englewood. Rather than delaying further, this Court now enters a denial of Jones's motion without prejudice to re-filing. Nothing in this Opinion and Order is meant to persuade BOP decision makers, who have more current and direct knowledge of Jones's medical conditions and rehabilitation status, from granting compassionate release, if the BOP sees fit to do so. This Court has considered Jones's motion, and for the reasons stated herein, denies his motion at this time.

I.  **Background**

Jones's conviction resulted from distributing a large quantity of methamphetamine on the Rosebud Sioux Indian Reservation in South Dakota. Docs. 66; 83 at ¶¶ 12–19. From September of 2013 until May of 2016, Jones was involved in a conspiracy to distribute at least 1.5 kilograms but less than 5 kilograms of methamphetamine. Doc. 83 at ¶¶ 19, 66. Jones received large quantities of methamphetamine, which he would break down and distribute to co-conspirators to sell to individuals on the Rosebud Sioux Indian Reservation. Doc. 83 at ¶¶ 12–14, 16–18. Jones also took multiple trips out of state to obtain methamphetamine that he would later

sell in South Dakota. Doc. 83 at ¶¶ 12, 17. Jones began distributing controlled substances to make an income; he "wanted to make money fast." Doc. 83 at ¶ 22. According to co-conspirators' statements, Jones earned a large financial profit from distributing controlled substances. Doc. 83 at ¶¶ 14, 17. Jones was considered an organizer, leader, manager, or supervisor of the conspiracy. Doc. 83 at ¶ 29.

Under the sentencing guidelines, Jones's total offense level for this offense was 31 and Jones was in criminal history category I. Doc. 83 at ¶¶ 35, 39. Based on his criminal history category and total offense level, Jones's advisory guideline range was 108 months to 135 months. Doc. 83 at ¶ 64. Because the offense had a mandatory minimum sentence (120 months) that was greater than the low end of the original guideline range, Jones's advisory guideline range became 120 months to 135 months custody. Doc. 83 at ¶¶ 63, 64. This Court held a sentencing hearing in Jones's case on April 11, 2017, and heard arguments on objections to the presentence investigation report (PSR). Doc. 82. Ultimately, the Court amended the PSR based on the objections. Doc. 82 at 1; Doc. 92. After hearing argument from both parties as to the appropriate sentence and hearing from Jones himself, this Court sentenced Jones to 120 months custody followed by a five-year term of supervised release. Docs. 82 at 1; 84 at 2–3. Jones has been in custody since October 19, 2016, and is currently incarcerated at FCI Englewood. Docs. 41, 42; 83 at ¶ 8; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 27, 2021).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract virus and be completely asymptomatic, while other people develop complications and die from the illness.

3

The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019- ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Jan. 27, 2021).

Jones currently suffers from the following medical conditions: Type 2 diabetes, hypertension, and obesity. Docs. 102 at 14; 92 at 504; 103 at 3. He has now filed a motion for compassionate release with this Court based on those conditions and the increased susceptibility to complications to COVID-19 he faces if he contracts the disease. Doc. 90.

## II.     Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

Jones submitted a request for compassionate release to the warden of his institution on August 3, 2020, outlining some of his medical conditions and his possible release plan. Doc. 97-1 at 1. Jones's request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Jones's behalf. Therefore, this Court may entertain Jones's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the

5

most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offense are detailed above and likely impacted many lives on the Rosebud Sioux Indian Reservation. At least 1.5 kilograms but less than 5 kilograms of methamphetamine were distributed on and around the Rosebud Sioux Indian Reservation over several years by Jones and his co-conspirators. Additionally, Jones was a leader or organizer of the conspiracy. Based on the large quantity of drugs and the mandatory minimum sentence of 120 months in custody, Jones's guideline range was 120-135 months in custody. A sentence at the bottom of the guideline range like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent. Third, such a sentence also was required to protect the public and serve the interests of punishment. Overall, the 120-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

As of August 11, 2020, Jones has served approximately 39% of his full sentence and approximately 46% of his "statutory term." Doc. 92 at 721. Since he entered BOP custody, Jones, now age 49, has completed numerous education courses, including soldering and construction courses, along with obtaining his GED. Doc. 92 at 718. He has zero discipline reports. Doc. 92 at 717.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide

examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Jones argues primarily that he qualifies for release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D), but argues in the alternative that he would qualify under

7

comment note l(A)(ii). Comment note l(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii). In his reply, Jones alleges that his low back pain prevents him from providing self-care. Doc. 103 at 7. Jones uses a cane to ambulate. Doc. 92 at 16, 27, 61. In his medical records, Jones notes that his back pain makes walking difficult and has prevented him from exercising or participating in physical therapy in a consistent manner. Doc. 102 at 1. Besides his use of a cane to walk, there is no additional evidence that Jones cannot provide self-care; he does not require assistance to bathe, eat, operate a phone or computer, or perform other basic activities. Additionally, Jones's back pain is not a medical condition from which he is not expected to recover. Jones contends that a surgery would alleviate this medical condition. Docs. 97 at 14; 103 at 7. As to Jones's argument that his diabetes, hypertension, and obesity prevent him from providing self-care in a correctional facility, Jones does not allege how these conditions prevent him from providing self-care within FCI Englewood. Therefore, Jones cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Jones's circumstances under the "catch all provision." Jones argues that his underlying health conditions combined with the increased risks he faces if he contracts COVID-19 establish "extraordinary and compelling" reasons other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently

justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

FCI Englewood currently has four active inmate infections of COVID-19 and zero active COVID-19 cases among the facility's staff; 671 inmates and 69 staff have recovered from the illness, and the facility has reported zero inmate deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2021). The question becomes whether Jones's medical conditions—Type 2 diabetes, hypertension, and obesity—combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

It is true that the CDC has recognized that individuals suffering from Type II diabetes or obesity (a body mass index of 30 or higher) have an increased risk of developing a severe illness if they contract COVID-19. Jones's BOP medical records do not list obesity as a current medical condition of Jones. Doc. 102 at 14. But Jones's height of 72 inches and most-up-to-date weight of 265 pounds puts his BMI at 35.9. Docs. 92 at 504; 103 at 3; see also Adult BMI Calculator, Centers for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Jan. 27, 2021). As for Jones's Type 2 diabetes, Jones takes two medications and insulin to control his condition. Doc. 92 at 4, 51, 61, 66, 99. Based on the medical records, Jones's diabetes appears to be monitored and controlled with medications and his chronic care visits, which include checking his A1C levels. Doc. 92 at 61–65, 114, 507–12.

Hypertension is a risk factor for more severe complications of a COVID-19 infection, but the extent of those risks is yet unknown, particularly if Jones's condition is well-controlled. Jones's

9

hypertension appears to be stable, managed, and well-controlled with his medication and chronic care visits. Doc. 92 at 4, 61, 99, 507. Because COVID-19 is a relatively new disease and so much is still unknown about how it affects individuals, this Court cannot say to what extent Jones's life is threatened by the existence of COVID-19 in FCI Englewood, especially considering the precautions put in place by the BOP to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 27, 2021).

Additionally, Jones contends he is more susceptible to COVID-19 due to his race. Indeed, the CDC noted there is evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19. Health Equity Considerations and Racial and Ethnic Minority Groups, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirns/2019-ncov/community/health-equity/race-ethnicity.html (last visited Jan. 27, 2021). Even so, the CDC attributes this to inequities in social determinants of health such as poverty and access to health care. Id. Thus, courts have not found race to be a risk factor for COVID-19 similar to age or medical condition. See United States v. Chambers, No. 18-47, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020); United States v. Leigh-James, No. 3:15-cr-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

Jones has served less than half of his 120-month sentence for organizing and leading a conspiracy to distribute a large amount of methamphetamine in South Dakota. Jones appears, to his credit, to have worked on improving himself in custody. Doc. 92 at 717–18. But the original sentence was chosen with care, considering Jones's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find at

this time "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

This Court delayed in ruling on Jones's motion after being alerted that the BOP was considering Jones for release. As stated above, Jones has better arguments for compassionate release than do many. This Court is receptive to receiving Jones's case anew on a subsequent motion for compassionate release with updated information. Once again, nothing within this Opinion and Order is intended to influence the BOP in its decision on whether to grant Jones compassionate release.

### IV. Conclusion and Order

Therefore, it is hereby

ORDERED that Jones's motion for compassionate release, Doc. 90, is denied without prejudice to re-filing another motion or pursuit of compassionate release through BOP proceedings.

DATED this 28th day of January, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE